IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.     PAUL G. TURNER, | ) | |
| | ) | |
|             Plaintiff, | ) | |
| v. | ) | CIV-14-1314-C |
| | ) | |
| 1.     PLAINS ALL AMERICAN GP, LLC, | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
|             Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Paul G. Turner, and for his Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.  Plaintiff, Paul G. Turner, is an adult male resident of Garfield County, Oklahoma.

2.  Defendant, Plains All American GP, LLC, is an entity doing business in Garfield County, Oklahoma.

## JURISDICTION AND VENUE

3.  This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of: (a) disability discrimination and retaliation in violation of the American with Disabilities Act ("ADA" and "ADAAA"), (b) violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 in the form of race discrimination; and (c) worker's compensation retaliation.

1

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the federal claims, and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Garfield County, Oklahoma. Defendant is doing business in such county and may be served in said county. Garfield County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 3, 2014. Plaintiff received his Dismissal and Notice of Rights letter from the EEOC dated November 6, 2014 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff, Paul Turner, is a Black male who was hired by Defendant as a driver on or about March 6, 2013.

8. Turner had previously performed work for Defendant through Sun Coast Resources, Inc. (Turner's former employer) who contracted with Defendant. Plaintiff began his employment with Sun Coast Resources, Inc. on or about March 6, 2012, and worked approximately one year under contract with Defendant. When the contract expired,

Defendant hired Turner into the same full-time position he held while working with Sun Coast Resources, Inc.

9. On or about April 17, 2013, Turner was injured on the job when he slipped on rocks outside an oil tank while pulling a hose to attach to his company truck. An oil spill had recently occurred in the area, and the ground was slippery and uneven due to the clean-up. Turner fell, and in an attempt to catch himself, grabbed onto the railing of a small staircase, which overturned sending him to the ground.

10. Turner felt immediate pain in his back and reported the incident to his supervisor Scott Sturgin (who is White). Sturgin told Turner not to file a Worker's Compensation action, but that he should instead use his personal insurance to cover the injury.

11. After informing Sturgin of his injury, Turner sought emergency medical attention. He was given a note from his doctor, placing him off work for a period of time. And, Turner was scheduled for a follow-up doctor's appointment on or about April 22, 2013.

12. After Turner's April 22, 2013 appointment, he was scheduled for a second follow-up appointment to take place on or about April 29, 2013. Turner was again taken off work and referred to an occupational center for rehabilitation.

13. As a result of his on-the-job injury, Turner suffered a serious injury to his spine. As such, he is a qualified individual with a disability within the meaning of the ADA and ADAAA in that he was disabled, has a record of disability, and/or was perceived as

disabled. His disability substantially limits and/or limited him in one or more major life activities, including but not limited to walking, standing, sitting, lifting, pushing, and pulling. And, his disability impacts one or more of his internal bodily processes, including but not limited to his musculoskeletal system.

14. Defendant's policies state that employees must receive a "full return to duty" release from a physician before being allowed to return to work.

15. Approximately eight (8) weeks after his injury, in or around June 2013, Turner contacted Sturgin to ask whether he could return to work on light duty, as Turner anticipated his doctor may give him a light duty release following the end of his eight (8) week physical therapy program. Sturgin told him that Defendant did not have any light duty. However, several weeks after Turner's injury, a White employee had been allowed to work with light duty restrictions (contrary to both the written policy and the statement made by Sturgin). Turner complained to Sturgin about the difference in treatment during their conversation in June.

16. On or about August 26, 2013, Turner had surgery on his back. And, on or about September 2, 2013, Turner had a second surgery due to complications with his original surgery. During this time, Turner remained off work at his doctor's direction.

17. In or around September 2013, Turner filed a Worker's Compensation lawsuit in the Oklahoma Worker's Compensation Court.

18. On or about February 14, 2014, Turner received a release from his doctor to

return to work with a lifting restriction of fifty (50) pounds. However, Turner's job did not require him to lift over 50 pounds, and, therefore, he could have performed the essential functions of his job with or without a reasonable accommodations.

19. Turner notified District Manager William Mitchell (who is White) of his ability to return to work. However, Mitchell stated that they "don't like to have people working that have a restriction," and that he needed to check with the corporate office about Turner returning to work and call him back. Mitchell, however, did not get back with Turner, despite numerous attempts by Turner to contact Mitchell.

20. Therefore, on or about February 21, 2014, Turner applied for unemployment benefits with the Oklahoma Employment Security Commission ("OESC") which were granted based on the fact that Plaintiff's separation occurred due to a "Lack of work."

21. Then, on or about March 22, 2014, Turner was notified by the OESC that he would no longer be receiving benefits due to the fact that Defendant had alleged that Turner was still an active employee with Defendant. Despite Defendant's representation to the OESC, Turner had not been offered any shifts or been allowed to return to work in any capacity. And, when Turner informed the OESC of his attempts to return to work and Defendant's refusal to allow him to do so, his unemployment benefits were reinstated. The OESC determination reads, "the Claimant was discharged when the Employer was unable to accommodate the Claimant's medical restrictions. This constitutes a lack of work. Therefore, benefits are allowed."

22. On or about March 30 ,2014, Plaintiff received a letter from Defendant backdated to September 19, 2013, showing it was re-sent on March 27, 2014 (though Plaintiff had not received any such letter in September) advising Turner that he should apply for Long Term Disability - despite the fact that he can perform the essential functions of his job with or without reasonable accommodations.  In fact, the only reason Turner was not working for Defendant was because Defendant has continuously refused to allow him to return.

23. On or about May 9, 2014, Turner received a letter from Defendant's Benefit Specialist Chantal Smith stating that Turner's "time off" was allegedly erroneously designated as FMLA leave beginning April 24, 2014 (more than two (2) months after Defendant's refusal to allow Turner to return to work and despite the fact that Turner had not been asked to submit any FMLA paperwork).  Smith's letter stated that "the FMLA did not apply to [Turner's] leave request."  Despite requests for clarification, there was no explanation as to why this period of time had been designated as FMLA, why FMLA would not apply if he had, in fact, been a current employee, or why it was to begin after he had already been terminated.

24. Then, on or about June 24, 2014, Defendant sent a letter to Turner, asking him to discuss his alleged "leave status and potential reasonable accommodations," despite Turner having been released to return to work by his doctor in February 2014.

25. As a direct and proximate result of Defendant's actions, Plaintiff has suffered

the injuries described hereafter.

## COUNT I - ADA AND ADAAA

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

26. The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

27. More specifically, Plaintiff was a qualified individual with a disability in that he suffers from a physical impairment (i.e. back injury) which substantially limits his ability to perform one or more major life activities as set forth above. Further, Plaintiff's disability impacts one or more of his internal bodily processes as shown herein.

28. Despite said impairments, Plaintiff could perform the essential functions of his job with or without reasonable accommodations at all relevant times hereto.

29. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

30. Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II - Title VII Violations

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

31. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of race discrimination.

32. Plaintiff is entitled to relief under Title VII because he is Black, was qualified for his job, was terminated, and his position was not eliminated after his termination.

33. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

34. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

### COUNT III:  WORKERS' COMPENSATION RETALIATION

For his third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35. Defendant's actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act.

36. Plaintiff sustained a job-related injury for which he could assert a claim for benefits under the Administrative Workers' Compensation Act.

37. Defendant had knowledge of Plaintiff's work-related injury.  Thereafter, Defendant terminated Plaintiff's employment.

38. As a direct and proximate result of Defendant's actions, Plaintiff has suffered

lost income, past and future, emotional distress and other non-pecuniary losses.

39. Defendant's actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 25th DAY OF NOVEMBER, 2014.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
EMILY VAN VOLKINBURG, OBA #31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800     (telephone)
(405) 239-3801     (facsimile)
leonardjb@leonardlaw.net
emilyv@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED